THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THOMAS E. MARLER,<br><br>        Plaintiff,<br><br>    vs.<br><br>ESTELLA DERR, *et al.*,<br><br>        Defendants. | CIVIL NO. 22-00108 LEK-KJM<br><br>ORDER DISMISSING COMPLAINT<br>WITH PARTIAL LEAVE GRANTED<br>TO AMEND |

## ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE GRANTED TO AMEND

Before the Court is a Prisoner Civil Rights Complaint ("Complaint"), ECF No. 1, filed by pro se Plaintiff Thomas E. Marler ("Marler") pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Marler alleges that three officials[1] at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu") violated the Eighth Amendment by denying him adequate medical care.[2] ECF No. 1 at 5–13. After screening the Complaint pursuant to 28 U.S.C. § 1915A(a), the Court DISMISSES the Complaint with

---

[1] Marler names as Defendants Warden Estella Derr ("Warden Derr"), Head Doctor Kwon ("Dr. Kwon"), and Nurse Dayton ("Nurse Dayton" or "Dayton") in their individual and official capacities. ECF No. 1 at 1–2.

[2] Marler is no longer incarcerated at FDC Honolulu. *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "05720-093" in "Number" field"; and select "Search") (last visited on June 15, 2022).

partial leave granted to amend.  If Marler wants this action to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before **July 15, 2022**.  In the alternative, Marler may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).

## I.  <u>STATUTORY SCREENING</u>

Pursuant to 28 U.S.C. § 1915A(a), the Court is required to screen all civil actions filed by prisoners seeking redress from a government entity or an officer or employee of a government entity.[3]  *See Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016).  During screening, the Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks damages from defendants who are immune from suit.  *See* 28 U.S.C. § 1915A(b); *Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  "If the . . . court determines that any of these grounds is satisfied, it must dismiss the case, and enter a 'strike' against the plaintiff prisoner."  *Byrd*, 885 F.3d at 641.

Failure to state a claim under 28 U.S.C. § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of

---

[3] Marler paid the fees associated with this lawsuit, so he is not proceeding in forma pauperis.  *See* ECF No. 14.

2

Civil Procedure 12(b)(6)."  *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citation omitted).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

During screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  When it is clear a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. **BACKGROUND**[4]

Marler commenced this action by signing the Complaint on March 15, 2022. ECF No. 1 at 14.  He paid the required fees on May 9, 2022.  ECF No. 14.

Marler alleges in Count I that he is a "two-time melanoma survivor."  ECF No. 1 at 5.  Marler underwent his first successful "melanoma surgery" in 1991, and a second successful surgery in 2021.  *Id.*  Following the 2021 surgery, Marler was instructed to see his "skin cancer physician" for a follow-up appointment every three to four months, for a period of three years.  *Id.*  During his last appointment in November 2021, "three newly developed atypical skin lesions were identified as possibly malignancies."  *Id.*  Surgery and a "histopathology diagnosis" were not scheduled, however, because of Marler's December 9, 2021 sentencing hearing. *See* Criminal Minutes, *United States v. Marler*, No. CR-19-00031-1 (D. Guam Dec. 9, 2021), ECF No. 243.[5]  In the Judgment from Marler's criminal case, the court recommended to the Bureau of Prisons ("BOP") that Marler "receive medical treatment before March 2022 from a board[-]certified dermatologist."  Judgment in

---

[4] Marler's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[5] Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of relevant federal records available electronically.  *See United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through [public access to court electronic records]." (citations omitted)).

a Criminal Case, *Marler*, No. CR-19-00031-1 (D. Guam Dec. 14, 2021), ECF No. 245 at 3; *see also* Amended Judgment in a Criminal Case, Marler, No. CR-19-00031-1 (D. Guam Jan. 10, 2022), ECF No. 254 at 3.  According to Marler, he was not seen by a dermatologist while he was at FDC Honolulu.  *Id.* at 5–6.

Marler alleges in Count II that he self-surrendered at FDC Honolulu on January 18, 2022.  *See* ECF No. 1 at 1.  Marler brought with him to FDC Honolulu a "custom designed nasal dilator," "orthopedic knee braces," and "prescription bifocal reading glasses."  *Id.* at 8.  The nasal dilator allowed Marler to exercise and sleep.  *Id.*  Marler experienced reduced "nasal flow" due to injuries sustained during a 2013 vehicular accident.  *Id.*  Marler wore the knee braces for chronic knee pain.  *Id.* at 9.  Marler wore the glasses "due to poor vision in [his] left eye and a slowly developing cataract in [his] right eye."  *Id.*

An unnamed "intake officer" at FDC Honolulu told Marler that he could keep only cash, identification cards, and religious materials.  *Id.*  Another intake officer confiscated a "generic nasal dilator" that Marler also had in his possession. *Id.* at 8–9.

Dr. Kwon met Marler for his initial medical screening on February 11, 2022. *Id.* at 9.  Dr. Kwon told Marler that his "unit team" could process a "Special Purchase Order" to acquire a nasal dilator.  *Id.*  When Marler asked his case manager to purchase the nasal dilator, however, Marler was told that the medical

team needed to process the request.  *Id.*  Marler waited two days, then he sent an electronic request to Dr. Kwon.  *Id.*  Marler also submitted a Request for Administrative Remedy on March 9, 2022.[6]  *Id.*  Marler's requests were "ignored." *Id.*

On February 11, 2022, Marler told Dr. Kwon about his knee pain.  *Id.*  Dr. Kwon told Marler that, after he was released from quarantine, Marler should ask if knee sleeves in the medical stockroom fit him.  *Id.*  Marler submitted a request on February 21, 2022, and a Request for Administrative Remedy on March 9, 2022. *Id.*  These requests were also "ignored."  *Id.*

Regarding his glasses, Marler submitted an "electronic emergency request" for replacement glasses on February 22, 2022.  *Id.*  He also submitted a Request for Administrative Remedy on March 9, 2022.  *Id.*  These requests were "ignored."  *Id.*

Marler alleges in Count III that two correctional officers found him on the floor of his cell on the afternoon of March 6, 2022.  *Id.* at 12.  According to Marler, he had fainted, fallen, and cut his head.  *Id.*  One of the correctional officers eventually escorted Marler to the medical unit, where he was seen by Nurse

---

[6] The BOP has adopted a four-step administrative remedy program.  *See* 28 C.F.R. §§ 542.13–.15.  The first step requires an inmate to "present an issue of concern informally to staff" and the staff to "attempt to informally resolve the issue."  28 C.F.R. § 542.13(a).  The second step requires an inmate to submit a "a formal written Administrative Remedy Request, on the appropriate form (BP-9)."  28 C.F.R. § 542.14(a).  The third step is an appeal to the appropriate Regional Director.  *See* 28 C.F.R. § 542.15(a).  The fourth step is an appeal to the General Counsel.  *See id.*

Dayton.  *Id.*  Dayton took Marler's vital signs, located a cut on his head, and stopped the bleeding.  *Id.*  When Marler asked Dayton how he would be monitored for signs of a concussion, Dayton told Marler to report to medical staff any cognitive issues.  *Id.*

Marler experienced a headache and pain in his jaw on March 7.  *Id.*  That day, Marler sent an "electronic 'medical emergency' message" to Dr. Kwon "indicating [Marler's] surprise that he was not called for a follow up."  *Id.* at 13.  The message went unanswered.  *Id.*  According to Marler, Dayton did not ask him if there were any lingering issues from the previous day.  *Id.*  On March 8, Marler discovered that he had lost twenty pounds since January 3, 2022.  *Id.*  Marler's headache and jaw pain persisted until at least March 9, when he submitted a Request for Administrative Remedy.  *Id.*

Marler seeks:  (1) $1,000,000, (2) an "Order instructing BOP to follow court order regarding skin cancer specialist"; (3) an "Order instructing Defendant's to replace confiscated medical devices"; (4) an "Order to replace prescription eye glasses"; (5) an "Order instructing FDC Honolulu Health Services to schedule [a] colonoscopy"; (6) an "Order instructing Dr. Kwon and Defendant's to schedule an MRI and other diagnostics to evaluate concussion risk due to Plaintiff's head injury on March 6, 2022."  *Id.* at 14.

## III.  DISCUSSION

### A.  Legal Framework for *Bivens* Claims

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights."  *Hernandez v. Mesa*, 582 U.S. ___, 137 S. Ct. 2003, 2006 (2017) (per curiam) (internal quotation marks and citation omitted).  *Bivens* involved a suit against individual federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures.  *See Bivens*, 403 U.S. at 389–90.  Since *Bivens*, the Supreme Court has expanded this implied cause of action only twice.  *See Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1855 (2017) ("These three cases — *Bivens*, *Davis*, and *Carlson* — represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *Davis v. Passman*, 442 U.S. 228 (1979) (suit under the Fifth Amendment's Due Process Clause for gender discrimination by a United States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth Amendment's Cruel and Unusual Punishment Clause for failure to provide adequate medical treatment by federal prison officials).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675).  "This is in accord with the Court's observation

that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[7]  *Id.* (quoting *Malesko*, 534 U.S. at 68).  Indeed, the Supreme Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution."  *Egbert v. Boule*, 596 U.S. ___, 2022 WL 2056291, at *11 (2022).

In deciding whether a *Bivens* remedy is available, courts first consider whether providing such a remedy is precluded by prior cases in which the Supreme Court or the Ninth Circuit has declined to recognize an implied right of action.  *See Lanuza v. Love*, 899 F.3d 1019, 1025 (9th Cir. 2018).  If a claim is precluded, that is the end of the matter.  If a claim is not precluded, courts then apply a two-step test.

---

[7] The Supreme Court declined to create a *Bivens* remedy in the following cases:  a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination,  *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); a suit under the Fifth, Eighth, and Fourteenth Amendments against United States Public Health Service personnel, *see Hui v. Castaneda*, 559 U.S. 799 (2010); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. ___, 137 S. Ct. 1843; a Fourth and Fifth Amendment suit against a United States Border Patrol agent, *Hernandez v. Mesa*, 589 U.S. ___, 140 S. Ct. 739 (2020); and a First and Fourth Amendment suit against a United States Border Patrol Agent, *Egbert v. Boule*, 596 U.S. ___, 2022 WL 2056291 (2022).

At step one, courts determine whether a plaintiff is seeking a *Bivens* remedy in a new context. *See Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018). The context is new "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1859. If the plaintiff is seeking a *Bivens* remedy in a new context, then courts proceed to the second step.

At step two, courts may extend *Bivens* only if two conditions are met. First, "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 596 U.S. at ___, 2022 WL 2056291, at *6 (citations omitted)). "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.*, 596 U.S. at ___, 2022 WL 2056291, at *9. "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.*, 596 U.S. at ___, 2022 WL 2056291, at *6. "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* Although the Supreme Court has yet to define the term, "special factors," it has explained that "the inquiry must

concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857–58.

The Supreme Court has stated that these two steps often resolve to a single question: "whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at ___, 2022 WL 2056291, at *6, 8. "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at ___, 2022 WL 2056291, at *6 (citation omitted). "Put another way, 'the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?'" *Id.*, 596 U.S. at ___, 2022 WL 2056291, at *5 (citation omitted). "If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case, no *Bivens* action may lie." *Id.* (citation omitted). Thus, "if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate,'" or "even if there is the '*potential'* for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.*, 596 U.S. at ___, 2022 WL 2056291, at *8 (citation omitted).

**B.     Official Capacity Claims Under *Bivens***

Marler names the Defendants in both their individual and official capacities. *See* ECF No. 1 at 1–2.

"A *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (internal quotation marks, brackets, and citation omitted). "This is because a Bivens suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Id.* (citation omitted). Thus, "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (internal quotation marks and citation omitted).

Any *Bivens* claims against Defendants in their official capacities are therefore DISMISSED with prejudice.

**C.     Supervisory Liability**

Marler names as a Defendant at least one supervisory official at FDC Honolulu — that is, the warden.  ECF No. 1 at 1.

"In the limited settings where *Bivens* does apply, . . . Government officials

may not be held liable for the unconstitutional conduct of their subordinates under

a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). This

is because "[t]he purpose of *Bivens* is to deter the *officer*." *Abbasi*, 582 U.S. at

___, 137 S. Ct. at 1860 (internal quotation marks and citation omitted). "*Bivens* is

not designed to hold officers responsible for acts of their subordinates." *Id.*

(citation omitted).

A *Bivens* claim must be "brought against the individual official for his or her

own acts, not the acts of others." *Id.*; *see also Jones v. McFadden*, No. 1:09–cv–

00957–DLB (PC), 2010 WL 2196849, at *3 (E.D. Cal. May 28, 2010) ("[W]hen a

named defendant holds a supervisorial position, the causal link between him and

the claimed constitutional violation must be specifically alleged." (citations

omitted)). Thus, to state a claim for relief under *Bivens* based on a theory of

supervisory liability, the plaintiff must allege facts showing that supervisory

defendants:

> (1) personally participated in the alleged deprivation of
> constitutional rights; (2) knew of the violations and failed to act
> to prevent them; or (3) promulgated or implemented a policy so
> deficient that the policy itself is a repudiation of constitutional
> rights and is the moving force of the constitutional violation.

*Id.* (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal

quotation marks and other citation omitted).

Here, it appears that Warden Derr is named solely because of her supervisory position. *See* ECF No. 1 at 2 ("The Defendant is Warden of FDC Honolulu and therefore responsible for all aspects of its operation."). Indeed, Marler does not mention Warden Derr by name in any of the Complaint's three Counts. *See id.* at 5-13. Any claims against Warden Derr solely based on her supervisory position are DISMISSED with prejudice. *See Fries v. Kernan*, Case No. 1:18-cv-00652-LJO-SKO (PC), 2018 WL 11260954, at *8 (E.D. Cal. Dec. 5, 2018) ("[A]ny allegation that supervisory personnel . . . somehow liable solely based on the acts of those under his or her supervision, does not state a cognizable claim."). For a claim against Warden Derr to proceed, Marler must plausibly allege that his rights were violated by Warden Derr's own actions. *See Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012) ("*Bivens* claims cannot proceed on a theory of *respondeat superior*, but must instead plead that a supervisor, by her 'own individual actions,' violated the Constitution." (citation omitted)).

## D. Improper Joinder

Marler alleges that he was denied adequate care because he was not seen by a dermatologist (Count I), various items were confiscated from him (Count II), and he did not undergo additional testing after he fainted, fell, and hit his head (Count III). *See* ECF No. 1 at 5–13.

Under Federal Rule of Civil Procedure 18(a), governing joinder of claims, a plaintiff may bring multiple claims, related or not, in a lawsuit against a single defendant.  To name different defendants in the same lawsuit, however, a plaintiff must satisfy Fed. R. Civ. P. 20, governing joinder of parties.  Rule 20(a)(2) allows joinder of defendants only if the following two requirements are met:  (1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action.  Fed. R. Civ. P. 20(a)(2)(A)–(B); *Stribling v. Tobias*, 690 F. App'x 972, 973 (9th Cir. 2017).  Unrelated claims involving different defendants belong in different suits.  *See What v. Honolulu Police Dep't*, 2014 WL 176610, at *4–5 (D. Haw. Jan. 13, 2014).

Here, it is unclear why Marler's claims are joined in the same action.  Specifically, it is unclear why Count I is joined with Counts II and III.  Although Counts II and III both focus on the alleged actions of Dr. Kwon, Dr. Kwon is not mentioned in Count I.  Indeed, the only apparent connections between Count I and the other two Counts are that the underlying events (1) allegedly occurred at FDC Honolulu and (2) involved the alleged denial of medical care.  This is not enough to join Count I with Counts II and III in a single suit.  *See Miller v. Thomas*, 2022 WL 183996, at *2 (E.D. Cal. Jan. 20, 2022) ("[T]here appears to be no basis for

litigating the two medical claims together in the same action[.] . . . These claims encompass discrete events and presumably, separate defendants, rendering them ill-suited to proceed in a single suit."); *see also Woods v. Curry*, 2013 WL 12222362, at *1 (N.D. Cal. May 2, 2013) (concluding that prisoner improperly joined claims "based on a wide variety of unrelated events that occurred at his prison").

If Marler decides to file an amended pleading, any claim asserted therein must be permitted by either Rule 18 or Rule 20. Marler may state a single claim against a single defendant. Pursuant to Rule 18, Marler may then add any additional claims to his action that are against the same defendant. Fed. R. Civ. P. 18. Marler may also add any additional claims against other defendants, if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2).

Marler may not pursue a combination of unrelated claims against various defendants in a single suit. *See Char v. Kaiser Hosp.*, 2019 WL 80890, at *3 (D. Haw. Jan. 2, 2019) ("Unrelated claims involving different defendants must be brought in separate actions."). He may, however, raise any unrelated claims in a separate action or actions. *See D'Agirbaud v. Kam*, 2020 WL 3258408, at *5 (D. Haw. June 16, 2020) (explaining that dismissing complaint for misjoinder allowed plaintiff "to decide which related claims he will pursue in this action, and which

claims he will bring in a new action").  Any attempt to join claims that are not permitted by the Federal Rules of Civil Procedure will result in those claims being dismissed as improperly joined and, at a minimum, will result in delay in their adjudication.  In deciding which claims, if any, Marler wants to pursue in this action, he should consider the following legal standards.

### D.  Claims Based on BOP Policies

Marler alleges at various points that prison officials violated BOP policies. *See* ECF No. 1 at 5, 8–10, 11–12.

In *Bivens*, the Supreme Court recognized "an implied right of action for damages against federal officers alleged to have violated a citizen's *constitutional* rights."  *Hernandez*, 137 S. Ct. at 2006 (emphasis added).  The Supreme Court has never recognized a *Bivens* cause of action for purported violations of BOP policies. *See Islaam v. Kubicki*, 838 F. App'x 657, 661 (3d Cir. 2020).  Indeed, as one court has stated, "[t]o allow a damages remedy for violations of BOP policy that do not amount to unconstitutional conduct would exceed the bounds of judicial function." *Id.*; *see also deWilliams v. Groves*, No. ED CV 17-356-GW (PLA), 2019 WL 994407, at *5 (C.D. Cal. Jan. 16, 2019) ("[T]he mere failure of a correctional officer to follow BOP rules, procedures, or policies does not rise to the level of a federal civil rights violation."); *Williams v. Rios*, No. 1:10-cv-01207-AWI-GBC (PC), 2011 WL 1627177, at *3 (E.D. Cal. Apr. 28, 2011) ("[A] *Bivens* action must

be founded upon a violation of constitutional rights, and a failure to adhere to administrative regulations does not equate to a constitutional violation." (internal quotation marks and citations omitted)).

Any *Bivens* claims solely based on purported violations of BOP policies cannot proceed.

## E.  Eighth Amendment—Denial of Adequate Medical Care

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).  Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates.'"  *Id.* (citations omitted).

As already noted, "*Carlson* recognized an implied claim under the Eighth Amendment's cruel and unusual punishment clause for prison officials' failure to provide adequate medical care."  *Hoffman v. Preston*, 26 F.4th 1059, 1064 (9th Cir. 2022) (citation omitted).  "To establish a claim of inadequate medical care, a

prisoner must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (some internal quotation marks and citation omitted). "If . . . a prisoner establishes a sufficiently serious medical need, that prisoner must then show the official's response to the need was deliberately indifferent." *Id.* at 786 (internal quotation marks, brackets, and citation omitted). "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (internal quotation marks, brackets, and citation omitted). "Deliberate indifference is a 'high legal standard' beyond malpractice or gross negligence." *Balla v. Idaho*, 29 F.4th 1019, 1025–26 (9th Cir. 2022) (citation omitted).

## 1.  Dermatology Appointment

Marler alleges in Count I that he was not seen by a dermatologist while he was at FDC Honolulu.  ECF No. 1 at 5–6.

Marler has plausibly alleged that he had a serious medical need.  According to Marler, he underwent his first successful "melanoma surgery" in 1991, and a second successful surgery in 2021.  *Id.*  Following the 2021 surgery, Marler was

instructed to see his "skin cancer physician" for a follow-up appointment every three to four months, for a period of three years. *Id.* During his last appointment in November 2021, "three newly developed atypical skin lesions were identified as possibly malignancies." *Id.* Given these allegations, Marler has plausibly identified a serious medical need.

Marler has not plausibly alleged, however, that a Defendant acted with deliberate indifference to his serious medical need. Although Marler complains that he was not seen by a dermatologist, *id.* at 5, Marler does not say who he complained to about this fact, what he said to this person or these people, and what he was told in response. To the extent Marler notes that the sentencing judge in his criminal case included language in the Judgment recommending that Marler be seen by a board-certified dermatologist by March 2022, Marler does not say who at FDC Honolulu was aware of this fact. Marler does not allege that he asked to see a dermatologist when he first met with Dr. Kwon on February 11, 2022, or at point thereafter. *See id.* at 9. Marler's "expectation" that he would be seen by a dermatologist, without more, does not meet the "high legal standard" for deliberate indifference. *See   Taylor v. Visinsky*, No. 3:10-cv-135-KRG-KAP, 2010 WL 11537458, at *2 (W.D. Pa. July 15, 2010) ("Deliberate indifference is not equivalent to failing to meet plaintiff's desires or expectations, or even failing to do what a reasonable person should have done[.]"), *report and recommendation*

*adopted*, No. 3:10-cv-135-KRG-KAP, 2010 WL 11537479 (W.D. Pa. Aug. 31, 2010), *aff'd*, 422 F. App'x 76 (3d Cir. 2011).  Marler's claims in Count I are therefore DISMISSED with leave granted to amend.

### 2.  Nasal dilator, knee braces, and glasses

Marler alleges in Count II that an "intake officer" (who is not named as a defendant) did not allow him to keep a "custom designed nasal dilator, custom orthopedic knee braces, and prescription bifocal reading glasses."  ECF No. 1 at 8.  Marler further alleges that another intake officer (who is also not named as a defendant) confiscated a "generic nasal dilator" that would have helped him sleep.  *Id.* at 8–9.

Even assuming, for purposes of screening, that Marler's need to retain each of these items amounted to a serious medical need, he has not plausibly alleged that a Defendant acted with deliberate difference.  As noted, the two intake officers mentioned in Count II are not named as defendants.  When Marler alerted Dr. Kwon of his need for a nasal dilator, Dr. Kwon told Marler that he could order one through his "unit team."  *Id.* at 9.  Although it turned out that the order needed to be placed through the "medical team," Marler does not allege that he alerted Dr. Kwon of this fact.  Nor does Marler allege that he ever submitted an order to the medical team.  When Marler told Dr. Kwon about his knee pain, Dr. Kwon instructed Marler to submit a request for a knee sleeve from the medical

stockroom, once Marler was out of quarantine.  *Id.*  According to Marler, he submitted the request, but it went unanswered.  *Id.*  Marler does not allege, however, that he ever communicated to Dr. Kwon that he was unable to secure a knee brace.  To the extent Marler contends that he was deprived of prescription glasses, he does not say who he asked for replacement glasses, what he said in doing so, and what he was told in response.  Marler does not allege that he ever spoke with Dr. Kwon about his glasses.  Finally, to the extent Marler suggests that a preventative colonoscopy should have been performed, Marler does not allege that he ever spoke to any prison official about his desire for a colonoscopy.  Marler's claims in Count III are therefore DISMISSED with leave granted to amend.

### 3.  Post-fall Care

Marler alleges in Count III that he was denied medical care after he fainted, fell, and hit his head on March 6, 2022.  Id. at 11–13.

According to Marler, the day after the fall he had a headache.  *Id.* at 12.  The headache persisted until at least March 9, 2022.  *Id.* at 13.  Even assuming, for purposes of screening, that Marler had a serious medical need, given his fall and lingering headache, he fails to allege that a Defendant acted with deliberate indifference.

Marler acknowledges that Nurse Dayton examined him soon after the fall, found the source of the bleeding on his head, stopped that bleeding. *Id.* When Marler asked how he would be monitored for a possible concussion, Dayton instructed Marler to report the loss of any cognitive function. *Id.* Marler has not plausibly alleged that Dayton acted with deliberate indifference. Marler does not allege that, after the day of the fall, he complained to Dayton about any lingering symptoms. To the extent Marler alleges that Dayton "did not attempt to interview" him the day after the fall, *id.* at 13, Marler fails to identify any reason why Dayton should have spoken with him. Indeed, Marler never told Dayton about his headaches. Marler, therefore, fails to state a claim against Dayton.

Marler also has not plausibly alleged that Dr. Kwon acted with deliberate indifference. Although Marler sent an "electronic 'emergency' message" to Dr. Kwon on the day after the fall, Marler does not allege that he described in that message the symptoms he was experiencing. *Id.* Two other prison officials told Marler that additional testing required Dr. Kwon's approval. Marler does not allege that he ever sought such approval from Dr. Kwon.

Marler's claims in Count III are therefore DISMISSED with leave granted to amend.

## F.    Injunctive Relief Under *Bivens*

In his request for relief, Marler seeks:  (1) $1,000,000, (2) an "Order instructing BOP to follow court order regarding skin cancer specialist"; (3) an "Order instructing Defendant's to replace confiscated medical devices"; (4) an "Order to replace prescription eye glasses"; (5) an "Order instructing FDC Honolulu Health Services to schedule [a] colonoscopy"; (6) an "Order instructing Dr. Kwon and Defendant's to schedule an MRI and other diagnostics to evaluate concussion risk due to Plaintiff's head injury on March 6, 2022."  *Id.* at 14.

"*Bivens* does not encompass injunctive and declaratory relief[.]"  *Solida*, 820 F.3d at 1093; *see Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." (citation omitted)); *Bacon v. Core Civic*, Case No.: 2:20-cv-00914-JAD-VCF, 2020 WL 3100827, at *6 (D. Nev. June 10, 2020) ("[I]injunctive relief may not be obtained through *Bivens* actions, which are limited to claims for monetary damages against persons in their individual capacities." (footnote omitted)).  Thus, to the extent Marler seeks injunctive relief in this action, such relief is not available under *Bivens*.[8]

---

[8] "[A] prisoner may bring a non-*Bivens* action for injunctive relief to stop Eighth Amendment violations based on conditions of confinement." *Pinson v. Othon*, No. CV-20-00169-TUC-RM, 2020 WL 6273410, at *5 (D. Ariz. Oct. 26, 2020) (citation omitted).  To bring such a claim, a prisoner must:

# IV.  **LEAVE TO AMEND**

The Complaint is DISMISSED with partial leave granted to amend.  Marler

may file an amended pleading on or before **July 15, 2022**.  Marler may not expand

his claims beyond those already alleged herein or add new claims, without

explaining how those new claims relate to the claims alleged in the Complaint.

Claims that do not properly relate to those in the Complaint are subject to

dismissal.

Marler must comply with the Federal Rules of Civil Procedure and the Local

Rules for the District of Hawaii.  Local Rule 10.4 requires that an amended

complaint be complete in itself, without reference to any prior pleading.  An

amended complaint must be short and plain, comply with Rule 8 of the Federal

---

(1) invoke jurisdiction under 28 U.S.C. § 1331, (2) allege facts to state a
colorable ongoing Eighth Amendment claim, (3) name as a defendant the
person who would be responsible for carrying out any order for injunctive
relief, and (4) request particular injunctive relief that is specifically targeted
to resolving the ongoing Eighth Amendment violation.

*Id.*; *see also Carballo v. Barr*, 491 F. Supp. 3d 860, 867 (D. Nev. 2020) ("[A] plaintiff may sue a
federal officer in his or her official capacity, invoking jurisdiction under 28 U.S.C. § 1331 and
the court's inherent equitable powers, and seek injunctive relief to remedy alleged constitutional
violations.").  For the reasons set forth above, however, Marler fails to state a colorable Eighth
Amendment claim.  In addition, any claims for injunctive relief against prison officials at FDC
Honolulu appear to be moot because Marler is no longer incarcerated there.  *See, e.g.*, *Dilley v.
Gunn*, 64 F.3d 1365, 1368–69 (9th Cir. 1995) (concluding that prisoner's claims for injunctive
relief were moot because he was transferred to another prison and had not demonstrated a
reasonable expectation that he would be transferred back); *Alvarez v. Hill*, 667 F.3d 1061, 1064
(9th Cir. 2012) ("Once an inmate is removed from the environment in which he is subjected to
the challenged policy or practice, absent a claim for damages, he no longer has a legally
cognizable interest in a judicial decision on the merits of his claim." (quotation marks and
citation omitted)).

Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form.  *See* LR99.2(a).  An amended complaint will supersede the preceding complaint.  *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

## V.  <u>28 U.S.C. § 1915(g)</u>

If Marler fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  <u>CONCLUSION</u>

(1) The Complaint, ECF No. 1, is DISMISSED for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

(2) Marler may amend his pleading, however, by curing the deficiencies in his claims on or before **July 15, 2022**.

(3) Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Marler may incur a strike under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Marler may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Marler a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 15, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**THOMAS E. MARLER VS. ESTELLA DERR, ET AL.; CV 22-00108 LEK-KJM; ORDER DISMSSING COMPLAINT WITH PARTIAL LEAVE GRANTED TO AMEND**