THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THOMAS E. MARLER, #05720-093, | CIVIL NO. 22-00108 LEK-KJM |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE GRANTED TO AMEND |
| vs. | |
| ESTELA DERR, *et al.*, | |
| Defendants. | |

## **ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE GRANTED TO AMEND**

Before the Court is a First Amended Prisoner Civil Rights Complaint

("FAC"), ECF No. 17, filed by pro se Plaintiff Thomas E. Marler ("Marler")

pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,

403 U.S. 388 (1971). Marler alleges that two officials[1] at the Federal Detention

Center in Honolulu, Hawaii ("FDC Honolulu") violated the Eighth Amendment by

denying him adequate medical care.[2] ECF No. 17 at 5–17.

---

[1] Marler names as Defendants Warden Estela Derr ("Warden Derr") and Head Doctor Kwon ("Dr. Kwon") in their individual capacities. ECF No. 17 at 1–2.

[2] Marler is no longer incarcerated at FDC Honolulu. *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "05720-093" in "Number" field"; and select "Search) (last visited on August 2, 2022).

After conducting the required screening pursuant to 28 U.S.C. § 1915A(a), the Court DISMISSES the FAC with leave granted to amend.  If Marler wants this action to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before **September 2, 2022**.  In the alternative, Marler may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).

## I.  <u>STATUTORY SCREENING</u>

Pursuant to 28 U.S.C. § 1915A(a), the Court is required to screen all civil actions filed by prisoners seeking redress from a government entity or an officer or employee of a government entity.[3]  *See Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016).  During screening, the Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks damages from defendants who are immune from suit.  *See* 28 U.S.C. § 1915A(b); *Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  "If the . . . court determines that any of these grounds is satisfied, it must dismiss the case, and enter a 'strike' against the plaintiff prisoner."  *Byrd*, 885 F.3d at 641.

---

[3] Marler paid the fees associated with this lawsuit, so he is not proceeding in forma pauperis.  *See* ECF No. 14.

2

Failure to state a claim under 28 U.S.C. § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citation omitted). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

During screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). When it is clear a claim cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. **BACKGROUND**[4]

### A. Dermatology Appointment

Marler is a two-time melanoma survivor.  ECF No. 17 at 5.  He underwent a successful melanoma surgery in 1991, and a second successful surgery in early 2021.  *Id*.  After the 2021 surgery, Marler was instructed by his "long-time skin cancer physician" to have a checkup every three or four months until 2024.  *Id*. at 6.

During a November 2021 checkup, three new "skin lesions" were identified as "possible malignancies."  *Id*.  Marler could not undergo another surgery, however, because he was scheduled to be sentenced in his criminal case on December 9, 2021.  *Id*.; s*ee* Criminal Minutes, *United States v. Marler*, No. CR-19-00031-1 (D. Guam Dec. 9, 2021), ECF No. 243.[5]  In the Judgment from Marler's criminal case, the court recommended to the Bureau of Prisons ("BOP") that Marler "receive medical treatment before March 2022 from a board[-]certified dermatologist."  Judgment in a Criminal Case, *Marler*, No. CR-19-00031-1 (D. Guam Dec. 14, 2021), ECF No. 245 at 3; *see also* Amended Judgment in a

---

[4] Marler's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[5] Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of relevant federal records available electronically.  *See United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through [public access to court electronic records]." (citations omitted)).

Criminal Case, Marler, No. CR-19-00031-1 (D. Guam Jan. 10, 2022), ECF

No. 254 at 3.

Marler self-surrendered at FDC Honolulu on January 18, 2022. *Id.* at 5. He

was seen by Dr. Kwon for his "initial medical checkup" on February 11, 2022. *Id.*

at 6. Marler "believed that the BOP would be obeying the Court's orders by the

end of February," so Marler does not allege that he asked Dr. Kwon about seeing a

dermatologist. *Id.*

On March 8, 2022, Marler met with a medical technician for "laboratory

work." *Id.* at 7. He also met with a registered nurse for a "routine EKG" on

March 10. *Id.* On March 16, he met with "MLP Roberts" for an "assessment of

ailments" unrelated to his skin. *Id.* During each of these encounters with medical

staff, Marler asked who was responsible for ensuring compliance with the

sentencing judge's recommendation. *Id.* Each time, Marler was told that any such

order would be implemented by Warden Derr and Dr. Kwon. *Id.* The staff

members instructed Marler to communicate any concerns with Warden Derr and

Dr. Kwon using "electronic communications." *Id.*

According to Marler, he "began communicating" with Warden Derr and

Dr. Kwon "by serving them with the Original Complaint . . . on March 16, 2022."

*Id.* Marler submitted additional "electronic communications" on April 12, 26, and

28, and May 22, 2022.  *Id*.  Marler did not receive a response to any of his communications before he left FDC Honolulu on June 7, 2022.  *Id*.

## B.  Nasal Dilator, Knee Braces, and Prescription Glasses

Before self-surrendering at FDC Honolulu, Marler met with the United States Marshal in Guam to process his travel to Hawaii.  *Id*. at 10.  The Marshal told Marler that he would be able to retain at FDC Honolulu a "custom designed nasal dilator," "custom orthopedic knee braces," and "prescription bifocal glasses."  *Id*.  The nasal dilator allowed Marler to engage in aerobic exercise and to sleep.  *Id*. at 9.  Marler relied on the knee braces to address "acute knee pain."  *Id*. at 10.  Without the prescription glasses, Marler experienced "debilitating headaches."  *Id*.  Upon arriving at FDC Honolulu, however, an unidentified "intake officer" told Marler that he could not keep the nasal dilator, knee braces, or his glasses.  *Id*.  The intake officer did assure Marler, however, that the items would be replaced.  *Id*.

Marler explained to Dr. Kwon his "emergency need" for the nasal dilator during his initial checkup on February 11, 2022.  *Id*. at 11.  Dr. Kwon told Marler that the "Housing Unit Counselor" could acquire an "over-the-counter nasal dilator for temporary use."  *Id*.  As a result, Marler submitted a request to his "Case Manager."  *Id*.  The case manager told Marler that Dr. Kwon was mistaken that the housing unit counselor could procure the nasal dilator.  *Id*.  The case manager told Marler that she would speak with Dr. Kwon.  *Id*.  Marler did not hear anything

6

more from the case manager. *Id*. Marler sent to Dr. Kwon an "electronic message" asking for a nasal dilator on February 25, 2022, and an informal complaint with the same request on March 9, 2022. *Id*. Marler did not receive a response to either request. *Id*.

On February 11, 2022, Marler also explained to Dr. Kwon his history of knee pain and need for his custom knee braces. *Id*. Dr. Kwon instructed Marler to request knee braces after he was released from quarantine. *Id*. According to Marler, he was released from quarantine on February 14, 2022, and he requested knee braces in "communications" dated February 21, 22, 25, March 9, April 12, 26, 28, and May 22, but they were all "ignored." *Id*. at 11–12.

Finally, on February 11, 2022, Dr. Kwon told Marler that an appointment to have his prescription glasses replaced would be "immediately scheduled." *Id*. at 12. When this did not happen, Marler sent an "electronic emergency request" to Dr. Kwon on February 22, 2022. *Id*. Marler also sent an informal complaint on March 9, 2022. *Id*. Both requests went unanswered. *Id*.

As already noted, Marler met with MLP Roberts on March 16, 2022, "to follow up with [Marler's] complaints about the three medical devices." *Id*. Roberts told Marler to contact Dr. Kwon about his "ongoing complaints." *Id*. In response to Marler's "repeated complaints," Dr. Kwon scheduled a follow-up meeting with Roberts on April 22, 2022. *Id*. In speaking with Dr. Kwon, Roberts

7

was surprised to learn that Marler had not received a nasal dilator because she had ordered one on March 16. *Id*. Roberts was also surprised to hear that Marler had not received knee braces or prescription glasses. *Id*.

## C. Procedural Background

Marler commenced this action by signing the original Complaint on March 15, 2022. ECF No. 1 at 14. On June 15, 2022, the Court issued an Order Dismissing Complaint with Partial Leave Granted to Amend. ECF No. 16. As relevant here, to the extent Marler asserted that he should have been seen by a dermatologist, the Court concluded that Marler failed to allege that a prison official acted with deliberate indifference to his serious medical need. *Id*. at 20–21. The Court further concluded that Marler failed to allege that a prison official acted with deliberate indifference to his need for a nasal dilator, knee braces, and prescription glasses. *Id*. at 21–22. The Court instructed Marler to file any amended pleading on or before July 15, 2022. *Id*. at 25.

The Court received the FAC on July 11, 2022. ECF No. 17. Marler alleges in the FAC that Warden Derr and Dr. Kwon denied him adequate medical care by failing to schedule a dermatologist appointment for him (Count I) and by failing to replace his nasal dilator, knee braces, and prescription glasses (Count II). *Id*. at 5–13. Marler seeks $500,000. *Id*. at 15.

## III.  DISCUSSION

### A.  Legal Framework for *Bivens* Claims

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights."  *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (per curiam) (internal quotation marks and citation omitted).  *Bivens* involved a suit against individual federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures.  *See Bivens*, 403 U.S. at 389–90. Since *Bivens*, the Supreme Court has expanded this implied cause of action only twice.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) ("These three cases — *Bivens*, *Davis*, and *Carlson* — represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *Davis v. Passman*, 442 U.S. 228 (1979) (suit under the Fifth Amendment's Due Process Clause for gender discrimination by a United States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth Amendment's Cruel and Unusual Punishment Clause for failure to provide adequate medical treatment by federal prison officials).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Abbasi*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675).  "This is in accord with the Court's observation that it has

'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[6]  *Id.* (quoting *Malesko*, 534 U.S. at 68).  Indeed, the Supreme Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution."  *Egbert*, 142 S. Ct. at 1809.

## B.  Eighth Amendment – Denial of Adequate Medical Care

Marler alleges that Warden Derr and Dr. Kwon violated the Eighth Amendment by denying him adequate medical care.  ECF No. 17 at 5–13.

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit

---

[6] The Supreme Court declined to create a *Bivens* remedy in the following cases:  a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination,  *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); a suit under the Fifth, Eighth, and Fourteenth Amendments against United States Public Health Service personnel, *see Hui v. Castaneda*, 559 U.S. 799 (2010); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 137 S. Ct. 1843; a Fourth and Fifth Amendment suit against a United States Border Patrol agent, *Hernandez v. Mesa*, 140 S. Ct. 739 (2020); and a First and Fourth Amendment suit against a United States Border Patrol Agent, *Egbert v. Boule*, 142 S. Ct. 1793 (2022).

inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (citations omitted). As already noted, "*Carlson* recognized an implied claim under the Eighth Amendment's cruel and unusual punishment clause for prison officials' failure to provide adequate medical care." *Hoffman v. Preston*, 26 F.4th 1059, 1064 (9th Cir. 2022) (citation omitted).

"To establish a claim of inadequate medical care, a prisoner must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (some internal quotation marks and citation omitted).

"If . . . a prisoner establishes a sufficiently serious medical need, that prisoner must then show the official's response to the need was deliberately indifferent." *Id.* at 786 (internal quotation marks, brackets, and citation omitted). "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (internal quotation marks, brackets, and citation

11

omitted).  "Deliberate indifference is a 'high legal standard' beyond malpractice or gross negligence."  *Balla v. Idaho*, 29 F.4th 1019, 1025–26 (9th Cir. 2022) (citation omitted).

### 1. Dermatology Appointment

Marler alleges in Count I that he was denied adequate medical care because he was not given a dermatologist appointment after he arrived at FDC Honolulu. ECF No. 17 at 5–8.

According to Marler, he is a "two-time melanoma survivor" who underwent successful melanoma surgeries in 1991 and 2021.  *Id*. at 5–6.  Following the 2021 surgery, Marler was instructed by his "skin cancer physician" to have a checkup every three to four months until 2024.  *Id*. at 6.  During his last appointment in November 2021, "three newly developed skin lesions were identified as possibly malignancies."  *Id*.  Marler could not undergo another surgery, however, because of his December 9, 2021 sentencing hearing.  *Id*.  Given these allegations, Marler as plausibly identified a serious medical need.

Marler has not plausibly alleged, however, that either Warden Derr or Dr. Kwon acted with deliberate indifference to his serious medical need before he commenced this action.  Marler does not allege that he communicated in any way with Warden Derr or Dr. Kwon before he signed the original Complaint on March 15, 2022.  Indeed, according to Marler, he did not communicate his need for

a dermatology appointment to either Warden Derr or Dr. Kwon until March 16, 2022—that is, the day *after* he signed the original Complaint.  *Id*. at 7.  ("The Plaintiff began communicating to the Defendants by serving them with the Original Complaint associated with CV22-00108 on March 16, 2022.").  Thus, Marler has not plausibly alleged that Warden Derr and Dr. Kwon knew of and disregarded a serious medical need before he commenced this suit.[7]  Count I is therefore DISMISSED with leave granted to amend.

### 2.  Nasal Dilator, Knee Braces, and Glasses

Marler alleges in Count II that he was denied adequate medical care because he was not provided a nasal dilator, knee braces, and prescriptions glasses.  ECF No. 17 at 9–13.

### a.  Nasal Dilator

Marler's left nostril was "mutilated" during a vehicle collision in 2013.  *Id.* at 9.  After Marler underwent three surgeries to improve "nasal flow," a doctor

---

[7] The timeline outlined by Marler also raises questions about whether he can satisfy the exhaustion requirement.  *See* 42 U.S.C.A. § 1997e ("No action shall be brought with respect to prison conditions under . . . any . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Vaden v. Summerhill*, 49 F.3d 1047, 101 (9th Cir. 2006) ("Because [the plaintiff] did not exhaust his administrative remedies prior to sending his complaint to the district court, the district court must dismiss his suit without prejudice.").  To the extent Marler alleges that he complained about his need to see a dermatologist "via electronic communications" on April 12, 26, 28, and May 22, as the Ninth Circuit has explained, "§ 1997e(a) requires exhaustion before the filing of a complaint and . . . a prisoner does not comply with this requirement by exhausting available remedies during the course of the litigation."  *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam).

"designed and constructed a custom nasal dilator." *Id*. at 11.  The nasal dilator allowed Marler to exercise and sleep.  *Id*.  Without the dilator, Marler experiences "sleep deprivation." *Id*. at 10.  Even if Marler had a serious medical need for the nasal dilator, he has not plausibly that Warden Derr or Dr. Kwon were deliberately indifferent to that need.

Marler asked Dr. Kwon for a nasal dilator on February 11, 2022.  *Id*. at 11. In response, Dr. Kwon told Marler that the "Housing Unit Coordinator" could obtain an "over-the-counter nasal dilator" for his use.  *Id*.  Marler's case manager, however, told Marler that Dr. Kwon was mistaken about the housing unit coordinator's ability to order a nasal dilator and that she would speak with Dr. Kwon.  *Id*.  It is unclear if the case manager ever spoke with Dr. Kwon.

According to Marler, he sent an "electronic message" asking for a nasal dilator to Dr. Kwon on February 25, 2022, and an informal complaint to Dr. Kwon on March 9, 2022.  *Id*.  In response to Marler's "ongoing complaints," Dr. Kwon met with MLP Roberts on April 21, 2022.  *Id*. at 12.  During this meeting, Roberts was surprised to learn that Marler had not received a nasal dilator, because she had ordered one for him on March 16, 2022.  *Id*.

Given this, Marler has not plausibly alleged that Dr. Kwon or any other prison official acted was deliberately indifferent to his need for a nasal dilator. Indeed, Dr. Kwon "committed to replace[]" the device, he told Marler what he

thought needed to be done to obtain the device, and he followed up with Roberts after Marler reported that the device had not been delivered.  It is not apparent why the nasal dilator never arrived, and nothing suggests that it was because of deliberate indifference by Dr. Kwon or Warden Derr.  Marler's claim in Count II based on the nasal dilator is DISMISSED with leave granted to amend.

### b.  Knee Braces

Marler has experienced "severe age-related knee pain" since 2015.  *Id*. at 11.  A doctor constructed a "custom knee compression device with hinged fiberglass splints" that eliminated Marler's knee pain.  *Id*.  Without the braces, Marler experiences "acute knee pain."  *Id*. at 10.  This pain "progressively worsened" during Marler's time at FDC Honolulu.  *Id*. at 12.  Even if Marler's knee pain amounted to a serious medical need, *see Walker v. Pompan*, No. C-10-1425 TEH PR, 2012 WL 1094325, *3 (N.D. Cal. Mar. 30, 2012) ("Viewing the facts in the light most favorable to plaintiff, plaintiff has established that his knee pain constitutes a serious medical need."), he has not plausibly alleged that Warden Derr or Dr. Kwon acted with deliberate indifference to that need.

Marler described his "immediate need" for knee braces to Dr. Kwon on February 11, 2022.  *Id*. at 11.  Dr. Kwon instructed Marler to submit a request to health services for knee braces after he was out of quarantine.  *Id*.

According to Marler, he submitted "communications" on February 21, 22, 25, March 9, April 12, 26, 28, and May 22. *Id*. at 11–12. Marler does not say, however, exactly what he said in these "communications," nor does he say if any of them were submitted to Dr. Kwon or Warden Derr. *Id*. Like with the nasal dilator, Dr. Kwon had "committed to replace[]" Marler's knee braces, and he communicated to MLP Roberts on April 21, 2022, that Marler had not received them. Thus, Marler has not plausibly alleged that Dr. Kwon or Warden Derr knew of and disregarded a serious medical need based on his knee braces. These claims are therefore also DISMISSED with leave granted to amend.

### c. Glasses

Marler has "relied on prescription bifocal reading glasses" since 2016. ECF No. 17 at 12. According to Marler, he has "poor vision in his left eye" and "a cataract in his right eye." *Id*. Without his glasses, Marler developed headaches that worsened with time. *Id*. Marler described the headaches as "severe" and "debilitating." *Id*. at 10. The Court assumes, for purposes of screening, that Marler had a serious medical need requiring glasses. *See, e.g.*, *Torres v. Finander*, No. 2:17-CV-02248-VAP-KS, 2017 WL 10574936, at *8 (C.D. Cal. Apr. 10, 2017) ("Plaintiff may proceed with his Eighth Amendment claim . . . for denial of the glasses."); *Green v. Miranda*, No. CIV S-10-1424 JAM, 2011 WL 3667430 (E.D. Cal. Aug. 22, 2011) ("If plaintiff's allegations are true, the lack of glasses

affected his daily activities, as he had difficulty reading and writing."), *report and recommendation adopted*, No. CIV S-10-1424 JAM, 2011 WL 5984018 (E.D. Cal. Nov. 22, 2011).  Nevertheless, Marler has not plausibly alleged that Warden Derr or Dr. Kwon was deliberately indifferent to this need.

On February 11, 2022, Dr. Kwon assured Marler that an appointment to have his glasses replaced would be "immediately scheduled."  *Id*. at 12.  After Marler submitted to Dr. Kwon an "emergency request" on February 22, 2022, and an informal complaint on March 9, 2022, Dr. Kwon scheduled a meeting with MLP Roberts that took place on April 21, 2022.  *Id*.  During this meeting, Dr. Kwon communicated to Roberts that Marler had not received any glasses.  *Id*. This version of facts suggests that Dr. Kwon recognized Marler's need for glasses and sought to secure them for him.  Marler has not plausibly alleged that either Dr. Kwon or Warden Derr was deliberately indifferent to a serious medical need. Marler's claims based on his glasses are therefore DISMISSED with leave granted to amend.

## IV.  <u>LEAVE TO AMEND</u>

The FAC is DISMISSED with leave granted to amend.  Marler may file an amended pleading on or before **September 2, 2022**.  Marler may not expand his claims beyond those already alleged herein or add new claims, without explaining

how those new claims relate to the claims alleged in the FAC.  Claims that do not

properly relate to those in the FAC are subject to dismissal.

Marler must comply with the Federal Rules of Civil Procedure and the Local

Rules for the District of Hawaii.  Local Rule 10.4 requires that an amended

complaint be complete in itself, without reference to any prior pleading.  An

amended complaint must be short and plain, comply with Rule 8 of the Federal

Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights

form.  *See* LR99.2(a).  An amended complaint will supersede the preceding

complaint.  *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th

Cir. 2015).  Defendants not renamed and claims not realleged in an amended

complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa County*,

693 F.3d 896, 928 (9th Cir. 2012).

## V.  <u>28 U.S.C. § 1915(g)</u>

If Marler fails to file an amended complaint or is unable to amend his claims

to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C.

§ 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action

or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while
> incarcerated or detained in any facility, brought an action or
> appeal in a court of the United States that was dismissed on the
> grounds that it is frivolous, malicious, or fails to state a claim

18

upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI. **CONCLUSION**

(1) The First Amended Complaint, ECF No. 17, is DISMISSED for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

(2) Marler may amend his pleading, however, by curing the deficiencies in his claims on or before **September 2, 2022**.

(3) Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Marler may incur a strike under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Marler may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Marler a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, **August 3, 2022**.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**THOMAS E. MARLER VS. ESTELLA DERR, ET AL.; CV 22-00108 LEK-KJM; ORDER DISMSSING FIRST AMENDED COMPLAINT WITH LEAVE GRANTED TO AMEND**